## Sarver's Estate.

Argued October 7, 1936. Before KEPHART, C. J., SCHAFFER, MAXEY, DREW, LINN, STERN and BARNES, JJ.

350

*Stewart M. Cunningham,* for appellant.

*Wallace M. Parker,* with him *Dalzell, McFall & Pringle,* for appellee.

OPINION BY MR. JUSTICE DREW, November 23, 1936:

Priscilla Sarver died in 1932, leaving a will executed in 1926. Following her death the document was admitted to probate; Eva May Hershberger was commissioned executrix. Her account, subsequently filed, indicated that she claimed to be the sole and unqualified devisee of the only real estate left by decedent. Accordingly, she did not account for it. Her interpretation of the will was questioned by Leonard Sarver, a brother, whose petition to compel his sister to account for the realty in question resulted in a decree in his favor. From the decree so entered the executrix has appealed.

The essential portions of the will are quoted below. Words in italics were supplied in the hand of testatrix, and those cancelled were stricken out by her. The rest was typewritten on a legal form.

"First. I direct that all my just debts and funeral expenses be fully paid and satisfied, as soon as conveniently may be, after my decease. *also a Tomb Stone to be put up in cemetery.*

"SECOND: I give, devise and bequeath unto my daughter, EVA MAY HERSHBERGER all my jewelry and household goods. *Also Dwelling House*

"THIRD: I give, devise and bequeath unto my said daughter, EVA MAY HERSHBERGER, ~~the sum of FIVE HUNDRED ($500.00) DOLLARS for taking care of me.~~ *my Building and Loan and whatever money is left to be equally divided to my 3 children and Grandson.*

"FOURTH: I order and direct that all my real estate be converted into cash, and for that purpose I hereby command, authorize, empower and direct my executrix hereinafter named to take full and complete charge of all my real estate, collect the rent and make all necessary repairs, and as soon as in her opinion a fair and reasonable price or prices can be obtained for the same, either at public or private sale, she shall sell the same and execute and deliver a good and sufficient deed or deeds to the purchaser or purchasers thereof in fee simple, without any order of court and without requiring the purchaser or purchasers to see to the application of the purchase money.

"FIFTH: As soon as and when my real estate has been sold and the purchase money collected, I give, devise and bequeath the proceeds thereof unto my three children, namely: LEONARD CLYDE SARVER, ALBERT ALONZO SARVER and EVA MAY HERSHBERGER in equal shares. also *Thomas Sarver Hershberger.*"

No issue is made of the correctness of the probate of the will. Since two years have passed without appeal no successful challenge can now be made: Act of June 7, 1917, P. L. 415, section 16(a). We assume the regular execution of the entire will and the insertion of the changes prior to the execution.

It has been said through numerous cases that the intention of the devisor is the polar star in the construction of wills: *Byrne's Estate,* 320 Pa. 513, 522. In the present case, its lead makes clear that the house should be entirely the property of the appellant. The second clause is not incompatible with the fourth and fifth. The addition of "Dwelling House" to the legacies of item two was manifestly with intent to except it from the operation of paragraph four. It is plain she wished to alter the disposition of this parcel and that her mind changed in the interval between the giving of directions for the draft of the will and its execution. That it was

the only realty she possessed then or at her death suggests no different conclusion. The fourth paragraph had always a potential application to after-acquired property; that it did not ultimately apply is not material. In the search for intention a will is to be read to speak as of the time of execution: *Peterson's Estate,* 242 Pa. 330, 338. The comprehensive and plural terms of clause four aid this interpretation. Moreover, testatrix's classification of the dwelling with the admittedly outright bequests of clause two would also indicate it was to devolve similarly.

Our interpretation gives effect to all parts of the document, as the construction of a will should where possible: *Morris's Account,* 298 Pa. 540. The specific clause is given prevalence over the general, and a conflict between clauses is avoided, both desirable results: *Conner's Estate,* 302 Pa. 534.

Nothing said or decided here derogates from *Byrne's Estate,* supra, where an intention to depreciate the quality of an absolute estate was found, or from *Billmyer v. Billmyer,* 296 Pa. 31, where it was not. In Pennsylvania a testamentary gift of property is presumed absolute in quality: Act of June 7, 1917, P. L. 403, section 12; *Smith v. Bloomington Coal Co.,* 282 Pa. 248, 250, 251. The intention not to have it so must be clearly expressed: *Eichenlaub's Estate,* 307 Pa. 357, 364. A similar attitude has been taken where, as here, we are asked to find a quantitative diminution: *Buechley's Estate,* 283 Pa. 107, 109. As already said the purpose here was clearly not to reduce appellant's interest in the house and appurtenances to a one-fourth share.

Though no litigated will is ever likely to be duplicated, the present case in all its phases is very like *Conner's Estate,* supra, and similar to the subordinate matter in *Lerch's Estate,* 309 Pa. 23, 29. The result we have reached accords with the views in those cases.

The decree of the court below is reversed, and the petition is dismissed; costs to be borne by the estate.