## Newlin Estate.

Argued March 27, 1951. Before DREW, C. J., STERN, JONES, BELL, LADNER and CHIDSEY, JJ

*A. M. Simon,* for appellant.

*Samuel Milliken,* for appellee.

OPINION BY MR. JUSTICE BELL, May 21, 1951:

Was the testator's bequest of the corpus of a trust fund of $6000. (after a life estate to his son) to his son's issue who are living at the time of the son's death, to be divided among said issue (income in the meantime to be paid to the son's widow) at the time said issue arrive at the age of 30 years, contingent or vested subject to be divested? If the gift was contingent then, as a majority of the court below held, the bequest violated

the rule against perpetuities; if it was vested subject to be divested it was a valid gift and the testator's 30 year old grandson, who is the appellant, is entitled to the fund.

The rule against perpetuities was well and clearly established;[*] its application has often been difficult and perplexing. Before discussing the rule against perpetuities and its applicability to this will, it seems wise to search Newlin's will to discover, if possible, the testator's intent, because that of course is the pole star: *Mulert Estate,* 360 Pa. 356, 61 A. 2d 841; *Sarver's Estate,* 324 Pa. 349, 188 A. 141; *Prime's Petition,* 335 Pa. 218, 6 A. 2d 530; *Byrne's Estate,* 320 Pa. 513, 181 A. 500.

The testator's intent must be ascertained by a consideration of the *entire* will which of course must be read in the light of the circumstances surrounding him when he made it: *Packer's Estate (No. 1),* 246 Pa. 97, 92 A. 65; *Hermann's Estate,* 220 Pa. 52, 58, 69 A. 285; *Mulert Estate,* 360 Pa. 356, 61 A. 2d 841; *March Estate,* 357 Pa. 216, 53 A. 2d 606. The attendant circumstances include the condition of his family, the natural objects of his bounty and the amount and character of his property: *Fahey's Estate,* 360 Pa. 497, 500, 61 A. 2d 880; *Mayer's Estate,* 289 Pa. 407, 137 A. 627; *Frisbie's Estate,* 266 Pa. 574, 109 A. 663.

Testator, a lawyer, died December 23, 1922, having made a last *will* which was *dated August 24, 1920.* He left an estate of approximately $44,000. He was survived by a *widow,* who is *still living,* a son, who died September 15, 1934, and a *grandson,* the present appellant, who was *born* December 1, *1919*—9 months before testator's will and 3 years prior to his death. Testator di-

---

[*] The Act of April 24, 1947, §4, P. L. 100, 20 Purdon 301.4, page 474, changes the law in one respect by making actualities at the end of the period, rather than possibilities at the time of the creation of interest, govern.

rected his executors to convert all his estate into money when they felt it was for the best interest of his estate, and when the whole of his residuary estate had been converted into money, he gave a full equal one-half share to his wife; $6000. in trust; a $1500. legacy to his niece, Carolyn Newlin; and the remainder of his residuary estate to Jessie Pearce Eckler, her heirs and assigns forever.

The provision with respect to the aforesaid fund of $6000. is as follows: "2nd . . . b. I give, devise and bequeath unto my Executor, hereinafter named, or its successor, the sum of Six thousand ($6,000.00) Dollars in [a spendthrift] trust, to . . . pay over the interest or dividends received therefrom, . . . when and as the same may be gotten in, to my son, John Harrison Newlin, for . . . his natural life. . . . *In case my son should leave a widow and issue\* at the time of his death then the said interest or dividends of said trust fund are to be paid to said widow until said issue\* arrive at the age of thirty (30) years at which time the corpus of said fund shall be divided among them,\*\** share and share alike. *In case my son should die without leaving issue\* living at the time of his death, and said issue\* of my son should leave no issue, or if my son leaves issue living at the time of his death, if such issue\* should die before arriving at the age of thirty (30) years* without leaving issue, then said trust fund is to be held in trust\*\* by my Executor . . . *and the interest* or dividends, when and as received, *paid over to my Brother,* T. F. Newlin *and on his death,* if his wife Melinda Newlin survives him, *to her, my Sisters, Celia N. Stephens and Lizzie V. Roberts,* or the

---

\* Although we do not regard it as material, it may not be amiss to note that the testator sometimes used "issue" to mean "children".

\*\* Italics throughout, ours.

\*\* The numerous contingencies which are unprovided for are obvious.

survivors of them, share and share alike. Upon the death of my said Brother, his wife, Melinda Newlin, and my said Sisters the *corpus of said fund shall be divided equally between my niece Carolyn Newlin, and. my nephew, Harold V. Newlin,* their heirs and assigns."

Testator's widow received a one-half share of his estate. It will be noted that his son was bequeathed *only the income* from the $6000. trust fund and *unless this appeal is sustained, testator's grandson will receive no part or share of his grandfather's estate.* The court below held that the bequest of the remainder was to the son's surviving issue *if and when* they arrived at the age of thirty (30) years (which by possibilities was a period longer than a life in being and 21 years thereafter) and was therefore contingent and violated the rule against perpetuities.

What is the rule against perpetuities? "1. Perpetuities are grants of property, wherein the vesting of an estate or interest is unlawfully postponed: Saunders on Uses and Trusts 196; and they are called perpetuities not because the grant, as written, would actually make them perpetual, but because they transgress the limits which the law has set in restraint of grants that tend to a perpetual suspense of the title, or of its vesting, . . .": *City of Philadelphia v. Girard's Heirs,* 45 Pa. 9, 26, 27.

". . . the rule against perpetuities prohibits the creation of future interests or estates which *by possibility\*\*\* may not become vested* within a life or lives in being at the death of the testator and twenty-one years thereafter, together with the period of gestation? See 21 R.C.L. 282; Hillyard v. Miller, 10 Pa. 326, 334; City of Phila. v. Girard's Heirs, 45 Pa. 9, 26; Yard's App., 64 Pa. 95, 98; Coggins's App., 124 Pa. 10; Rhodes's Est., 147 Pa. 227; Barton v. Thaw, 246 Pa.

---

\*\*\* Changed by the Act of April 24, 1947, supra.

348; Lilley's Est., 272 Pa. 143, 151; Feeney's Est., 293 Pa. 273; Gray, Rule against Perpetuities, 3d edition, section 214; Foulke, Perpetuities, etc., in Pennsylvania, section 329. . . . The rule is not one of construction, but a positive mandate of law to be obeyed irrespective of the question of intention. . . . Where the gift is to a class, the class must be such that all the members of it must necessarily be ascertained and take absolutely *vested interests within the period.* If the gift is to a class and it is void as to any one of the class, it is void as to all: 21 R.C.L. 303, 308; Coggins's App., supra; Wickersham's Est. (No. 1), 261 Pa. 121, 127; Gray, Rule against Perpetuities, 3d edition, sections 373 et seq.; Foulke, Perpetuities, etc., in Pennsylvania, section 445.": *Lockhart's Estate,* 306 Pa. 394, 400-401, 159 A. 874.

If a bequest is to a class who take at the death of a life tenant, the fact that the members of the class are unknown or even not in being at the death of the testator, or that their interest is subject to be increased or decreased or divested by subsequent events, will not render the gift contingent or violate the rule against perpetuities: *Edwards' Estate,* 255 Pa. 358, 99 A. 1010; 360 Pa. 504, 62 A. 2d 763; *Overbrook Heights Building & Loan Assn. v. Wilson,* 333 Pa. 449, 5 A. 2d 529; *Reed's Estate,* 307 Pa. 482, 161 A. 729; *McCauley's Estate,* 257 Pa. 377, 101 A. 827; *Lloyd's Estate,* 326 Pa. 230, 192 A. 98.

"Where an estate is given to a life tenant, with remainder to the children of the life tenant, the estate vests at once upon the birth of each child, subject to open and let in after-born children, . . . without regard to the question of whether or not a child survives the life tenant": *Edwards' Estate,* 255 Pa. 358, 361, 99 A. 1010; *Edwards' Estate,* 360 Pa. 504, 508, 62 A. 2d 763.

"The interest of the defendant, the issues in being of the class of which he is a member, may be decreased

or enlarged by future issue or by the death of some of the living issue in the same class, but this does not make his estate a contingent one": *Overbrook Heights Building & Loan Assn. v. Wilson,* 333 Pa. 449, 454, 5 A. 2d 529.

"Where a bequest is to a class, the vesting is not postponed because of uncertainty as to who, if any, may be the constituents of the class at the time fixed for the enjoyment of it. If there is a *present right* to a future possession, though that right may be defeated by some future event, contingent or certain, there is nevertheless a vested estate": *McCauley's Estate,* 257 Pa. 377, 382, 101 A. 827; *Reed's Estate,* 307 Pa. 482, 484, 161 A. 729.

An estate which is vested and payable to a grandson at 25, but is divested if the grandson die before attaining 25 years of age, does not violate the rule against perpetuities: *Bilyeu's Estate,* 346 Pa. 134, 137, 29 A. 2d 516; *Allen's Estate,* 347 Pa. 364, 366, 32 A. 2d 301.

Before applying these well settled principles, *"The proper procedure* is to determine the true construction of the will, just as if there was no such thing in existence as the rule [against perpetuities], and then to apply it rigorously in complete disregard of the wishes and intention of the testator: 21 R.C.L. 294; Bender v. Bender, 225 Pa. 434, 438; Gerber's Estate, 196 Pa. 366, 375; Gray, Rule against Perpetuities, 3d edition, section 629": *Lockhart's Estate,* 306 Pa. 394, 401, 159 A. 874.

We must first, therefore, determine the true construction of the will without any thought or consideration of the rule against perpetuities. If (and only if) the intention of the testator, gathered from the four corners of the will, is—as here—not clear, we can resort to pertinent rules of construction in

order to aid in the ascertainment of the testator's intent: *Weir's Estate,* 307 Pa. 461, 467, 161 A. 730; *Groninger's Estate,* 268 Pa. 184, 187, 110 A. 465; *Mulliken v. Earnshaw,* 209 Pa. 226, 58 A. 286; *Woods' Estate,* 321 Pa. 497, 500, 184 A. 13.

The first of these pertinent presumptions or rules of construction is that an heir is not to be disinherited except by clear and plain language or as it is often expressed, by plain or express words or by necessary implication: *Grothe's Estate,* 229 Pa. 186, 190, 78 A. 88; *Lippincott's Estate,* 276 Pa. 283, 290, 120 A. 136; *Murray's Estate,* 313 Pa. 359, 362, 169 A. 103; *French's Estate,* 292 Pa. 37, 41, 43, 140 A. 549.

Moreover, if it is not clear from the language of the will whether the remainder is vested or contingent, then as Mr. Justice LINN said in *Weir's Estate,* 307 Pa. 461, 468, 469, 161 A. 730, "it is necessary to keep in mind the rule 'that an interest is to be construed contingent *only when it is impossible to construe it as vested'*: Rau's Est., 254 Pa. 464, 98 Atl. 1068; that the intention to create a contingent interest *'should appear plainly, manifestly and indisputably:'* McCauley's Est., 257 Pa. 377, 101 Atl. 827. . . . In Marshall's Est., supra, it is said: 'The law leans to vested rather than to contingent estates, and the presumption is that a legacy is vested: Carstensen's Est., 196 Pa. 325 [46 Atl. 495]; Tatham's Est., 250 Pa. 269 [95 Atl. 520]; Neel's Est., 252 Pa. 394 [97 Atl. 502]; Rau's Est. [supra], and *"the presumption that a legacy was intended to be vested, applies, with far greater force, where a testator is making provision for a child or a grandchild,* than where the gift is to a stranger or to a collateral relative:" Wengerd's Est., 143 Pa. 615 [22 Atl. 869]' ". See to the same effect: *Groninger's Estate,* 268 Pa. 184, 189, 110 A. 465.

The majority of the court below relied mainly on *Thompson Trust,* 363 Pa. 85, 69 A. 2d 112, *Moore v.*

*Smith,* 9 Watts 403, and *Elsbree Estate,* 362 Pa. 494, 66 A. 2d 851, which interpret the words "transfer" or "pay" or "divide" to mean a contingent gift. The strongest case is *Thompson Trust,* 363 Pa. 85, 69 A. 2d 112. In *Thompson Trust,* settlor directed his trustee to pay the dividends from 300 shares of stock to his granddaughter Bessie, for her life, and after her death to pay the dividends unto her children, and as each child reaches the age of 21 years to transfer to such child a pro rata number of shares of said stock, and in default of any such child reaching 21 years to transfer said stock to the settlor's heirs. This case is representative of a line of cases which hold that where there is no separate and antecedent gift which is independent of the direction and time for payment and the gift is necessarily implied solely from the direction to pay or divide or transfer, the legacy is contingent. On the other hand these decisions are offset by another line of cases which hold similar gifts to be *vested*: *Lloyd's Estate,* 326 Pa. 230, 192 A. 98; *Allen Estate,* 347 Pa. 364, 32 A. 2d 301; *Rickenbach Estate,* 348 Pa. 121, 34 A. 2d 527; *Safe Deposit & Trust Company v. Wood (No. 1),* 201 Pa. 420, 50 A. 920; *Bilyeu's Estate,* 346 Pa. 134, 29 A. 2d 516; *Middleton's Estate,* 212 Pa. 119, 61 A. 808; *Groninger's Estate,* 268 Pa. 184, 110 A. 465; *Reed's Appeal,* 118 Pa. 215, 11 A. 787.

In *Lloyd's Estate,* 326 Pa. 230, 192 A. 98, the trustee was directed to pay the income to testator's wife for life and after her death "in trust to be equally *divided* between my children and the issue of any deceased child as they respectively arrive at the age of twenty-one years, share and share alike, . . . the income of said respective shares to be paid to said children, or grandchildren, if any, during their respective minorities". The gift was obviously contingent if the grandchildren or issue were entitled to the corpus only if they arrived at the age of 21. The Court held that *the interest was*

*vested* and said (page 233) : "As long ago as McClure's Appeal, 72 Pa. 414, we pointed out (p. 418) : 'Though there be no other gift than in the direction to pay or distribute in futuro, yet if such gift or distribution appears to be postponed for the convenience of the fund or property, or where the gift is only postponed to let in some other interest, the vesting will not be deferred till the period in question.' *Here there can be no question that the gift was postponed to enable the widow to enjoy the income from the estate during her life.*" This language seems equally applicable to the Newlin will.

In *Allen Estate,* 347 Pa. 364, 32 A. 2d 301, testatrix left $8000. from the residuary estate in trust to pay the net income to her sister Rosa for life. If Rosa survived her, immediately upon Rosa's death, should nephew Carl's two children, Eleanor and Carl, have arrived at the age of 30 years, the trust should cease and the principal should be paid to them; but should they not have arrived at the age of 30 years at the time of Rosa's death, then "I direct that the share of either or both of them be held in Trust . . . until, he, she, or they, shall have arrived at the age of thirty (30) years and be . . . paid over to them . . . absolutely and in fee." The Court held that the trust estate *vested in Eleanor and Carl upon the death of Rosa* and that their interest was not contingent on their arrival at 30 years of age.

These cases illustrate how difficult, if not impossible, it is to harmonize or reconcile the myriad will cases which fall on one or the other side of the vested-contingent line, and especially is this so in the so-called "pay and divide" cases which create so many technical and perplexing problems.

While precedents in will cases are generally of little value, because few wills have a twin brother, we believe that *Middleton's Estate,* 212 Pa. 119, 61 A. 808,

is the closest case to the present will. In *Middleton's Estate* the testator directed his trustees to pay the income from the balance of his residuary estate *to his wife "until his said grandson should be twenty-five,* and then or at his death, whichever event should first happen, to convey one-third to testator's son, Benjamin, ... one other third to testator's son Lewis, ... and *the remainder, upon his attaining the said age, to his grandson absolutely."* It will be noted that in *Middleton's Estate,* just as in Newlin's estate the income was payable not to the grandson, but to the [testator's] wife until the grandson arrived at the age of 25 [30] years, at which time the corpus of the fund was to be paid to him. It is very difficult to differentiate the Newlin will from the Middleton will which the Court held gave *the grandson a vested interest.*

In the light of these rules of construction we believe that the ambiguity in this will should be resolved (1) in favor of vesting, and (2) in favor of the heir. We construe this will to mean that the testator intended to give to those of his son's children who were living at his son's death *a vested interest* in the corpus of the $6000. trust fund; that this fund should be paid to them when they become 30 years old; that if they died prior thereto without leaving issue, the interest thereon should be paid to *testator's living ... brother* (and wife) and sisters and upon the survivor's death, the corpus to "be divided equally *between my niece Carolyn* Newlin, *and my nephew, Harold V.* Newlin, their heirs and assigns". We come more readily to this conclusion because it is equitable in this case to benefit the testator's grandson, and more particularly because testator's gift over was not to issue who might be living at some remote future date, but to living persons whom he knew and specifically named, thus indicating, we believe, an intent, independent of any rules of construction, to give his remainder to the children of his

538

*son who were living at his son's death* and to postpone merely the time it became payable. Under this construction of the will, all authorities are agreed that there was no violation of the rule against perpetuities.

Judgment reversed; each party to pay his or her respective costs.