## Phillips Estate

*George F. Taylor,* for accountant.

*Harold E. Harper,* for widow's executor.

*John P. Davis, Jr.,* and *William White,* for executors of testator's deceased children.

McKENNA, J., September 30, 1971.—The question before us in this case is how shall the trust estate be distributed.

The trustee's account was audited on June 22, 1971. John B. York, trust officer of Girard Trust Bank, the

fiduciary, testified that it is ready to make distribution when the identities of the parties to whom the estate shall be awarded may be determined.

Testator died on May 28, 1940. In his will dated April 23, 1940, he had created a trust for the benefit of his widow for her lifetime, with remainders to his children. The widow survived testator's two children and died on October 4, 1970.

Testator was domiciled in Allegheny County, Pa., at the time of his death and resided temporarily in Winskip, Surrey, England. His will was duly probated in the office of the Register of Wills of Allegheny County on October 7, 1940, and on the same day letters testamentary were granted to Girard Trust Company (now Girard Trust Bank), the executor named in the will. The trust company filed its account, as executor, and this was duly audited. This court, by its decree of distribution dated May 26, 1942, awarded the residuary estate to Girard Trust Company, as trustee, pursuant to paragraph 4 of the will of said Walter Phillips, deceased. This paragraph presents the problem in the case at bar. It must be construed. It reads as follows:

"4. I GIVE DEVISE AND BEQUEATH all the rest and residue of my property howsoever and wheresoever situate to my trustees in trust to call in and collect the same and to invest and reinvest the same in their absolute discretion and to pay the net income thereof after deducting their proper charges to my said wife Zelpa Agnes Phillips during her life and after her death to transfer and pay over the principal of my residuary trust fund in equal shares to my said son Walter Phillips Junior and my daughter Margaret and if either of them be then dead the whole to the survivor of them provided nevertheless that if either of my said children shall predecease me leaving a child or children him or

her surviving then I DIRECT that such child or children shall take the share which his or her parent would have taken if living and if more than one in equal shares."

Walter Phillips was survived by his widow, Zelpa Agnes Phillips, and by two children, Margaret Phillips and Walter Phillips, Jr. Margaret Phillips died a resident of the State of New York, unmarried and without issue, in November of 1952, leaving a will in which she appointed her brother, Walter Phillips, Jr., as her executor. In her will she bequeathed to her said brother, her entire estate. Central Trust Company of Rochester, New York, is now administrator, c.t.a. of her estate.

Walter Phillips, Jr., died a resident of the State of New York on September 10, 1956, without issue, leaving a will wherein he appointed the Central Trust Company, the same fiduciary as is serving in Margaret's estate, as his executor and trustee. He left to survive him his widow, Frederica S. Phillips, as his principal beneficiary. She is alive and is sui juris.

Zelpa Agnes Phillips, widow of decedent and life beneficiary of the residuary trust created in his will, died on October 4, 1970, a resident of Sussex County, England. By the terms of her last will and testament dated in December of 1953, she left her residuary estate on certain trusts. Gerald Cuthbert Whitemore, a son of Zelpa Agnes Phillips by a marriage prior to her marriage to Walter Phillips, receives the income from the trust during his lifetime or until the occurrence of certain other events which it is unnecessary here to detail. On the termination of the interest of the said Gerald, the income and principal from the estate passes to his wife and children.

Following the death of the widow, the trustee, Girard Trust Bank, filed its account of the trust estate, and

this came before us for audit, as above stated. The account shows a net balance for distribution of $376,935.51.

Mr. Taylor, counsel for the trustee, stated the issue in the case as follows:

"The legal question involved is under paragraph 4 of the will of the testator. The two children are deceased without issue. There is an intestacy that dates back to the date of death of the testator, the intestacy being under the Intestate Act of 1917 then in effect, whereby the widow's estate and the estate of each child would have to receive a third—or . . . is the estate of Margaret and/or the estate of Walter Phillips, Jr., entitled to the residue."

We must now determine if under paragraph 4 of decedent's will there is an intestacy following the death of the life tenant, or if the remainder vested in Margaret and Walter, Jr., in which event Walter, Jr.'s estate will now receive the entire residue as legatee of Margaret; or if it vested in Walter, Jr., alone.

The three possibilities may be stated as follows:

1. Since neither Walter, Jr., nor Margaret survived the life tenant, an intestacy resulted, and the estate will be divided equally among the estates of Zelpa, Margaret and Walter, Jr. This is the construction advocated by counsel for Zelpa's estate.

2. Margaret and Walter, Jr., received vested interests, and the estate of Walter, Jr., is now entitled to the entire interest, one-half as a vested remainder under testator's will, and one-half under Margaret's will.

3. Walter, Jr., is entitled to the entire interest now as the survivor of himself and Margaret.

Counsel for the widow, Zelpa, bases his claim to a share in the estate on the ground that testator made no provision for the disposition of his estate following the deaths of Margaret and Walter, Jr., without chil-

dren prior to the date of Zelpa's death. He argues that an intestacy results and that the remaining property of Walter Phillips must be divided equally among the estates of Zelpa, Margaret and Walter, Jr., under the provisions of the Intestate Act of June 7, 1917, P. L. 429, 20 PS §2.

We find, after consideration of the arguments made, that testator created vested estates in Margaret and Walter, Jr., and that the interest of either was subject to divestment by the death of one prior to the other after testator's death and during the lifetime of the widow. On this event the entire estate vested absolutely in the survivor of the two children. The estates were not contingent remainders.

It is clear from a reading of the will that testator intended his widow to take only a life estate. Thus, her interest terminated at her death.

On testator's death in 1940, Margaret and Walter, Jr., were living. They received vested remainders under their father's will. Margaret died in 1952. Her interest was then divested and passed to Walter, Jr., by virtue of the words in testator's will.

Substantially the same result as we have reached would be arrived at if it were held that the two children of testator received vested remainders, not subject to divestment, on their father's death, since Walter, Jr., is sole legatee under Margaret's will. Such a construction would ignore the phrase in the will reading, "and if either of them be then dead the whole to the survivor of them." On Margaret's death, her interest vested in her brother under this phrase. It is to be noted that testator made no provision for disposition of the estate in the event of the death of *both* children during the lifetime of the widow. Thus, the entire interest vested in Walter, Jr., and his estate is now entitled to that share.

The respective interests of Margaret and Walter, Jr., were also subject to being divested by the death of either or both prior to testator's death, leaving a surviving child or children. This proviso in testator's will is imperative for two reasons: (1) Both children survived the testator, and (2) both died childless. Therefore, the following language in clause 4 may be disregarded:

". . . provided nevertheless that if either of my said children shall predecease me leaving a child or children him or her surviving then I DIRECT that such child or children shall take the share which his or her parent would have taken if living and if more than one in equal shares."

The bequests to the two children are absolute. The language of the will is:

". . . after her death to transfer and pay over the principal of my residuary trust fund in equal shares to my said son, Walter Phillips, Jr. and my daughter, Margaret . . ."

There is no contingency attached to this gift. The beneficiaries received their interests on the death of testator. Time was annexed to the enjoyment of the gift, but not to its vesting. Where this is the case, the interest is vested. This rule is well established. In Hope Estate, 398 Pa. 470, 476 (1960), the court reiterated it as follows:

"In Newlin Estate, 367 Pa. 527, 80 A.2d 819, the Court said (page 533): '. . . If there is *a present right* to a future possession, though that right may be defeated by some future event, contingent or certain, there is nevertheless a vested estate: McCauley's Estate, 257 Pa. 377, 382, 101 A.827; Reed's Estate, 307 Pa. 482, 484, 161 A. 729.' "

We here follow the rule that the law favors vested estates. In Houston Estate, 414 Pa. 579, 594 (1964), the court states as follows:

" '. . . ". . . 'The law leans to vested rather than to contingent estates, and the presumption is that a legacy is vested: Carstensen's Est., 196 Pa. 325 [46 Atl. 495]; Tatham's Est., 250 Pa. 269 [95 Atl. 520]; Neel's Est., 252 Pa. 394 [97 Atl. 502]; Rau's Est. [supra], and "the presumption that a legacy was intended to be vested, applies, with far greater force, where a testator is making provision for a child or a grandchild, than where the gift is to a stranger or to a collateral relative:" Wengerd's Est., 143 Pa. 615 [22 Atl. 869]' " . . .'

"The intention of a testator or settlor to create a contingent interest must appear clearly and plainly, otherwise the interest will be construed to be vested, or vested subject to be divested."

Our conclusion also follows the rule that the court's will avoid an intestacy as to any portion of a decedent's estate wherever possible. See Carmany Estate, 357 Pa. 296, 299 (1947). Here, Mr. Justice Patterson, for the majority, states as follows:

"One who writes a will is presumed to intend to dispose of all his estate and not to die intestate as to any portion thereof: . . . If possible to do so, a will must be construed to avoid an intestacy;"

Also, in Farrington Will, 422 Pa. 164 (1966), Mr. Justice Roberts stated the rule as follows, page 168:

"When a decedent drafts a last will and testament, he is presumed, in the absence of an indication to the contrary, to have intended to dispose of his entire estate and not to die intestate as to any part of it."

Hill Estate, 432 Pa. 269 (1968), is to the same effect.

An analysis of the will before us convinced us that testator did not die intestate as to any part of his estate.

We have found Lloyd's Estate, 326 Pa. 230 (1937), to be very persuasive. In that case, testator devised his

estate to a trustee to pay the income to his wife for life and at her death to his children in equal shares, and issue of deceased children per stirpes. One son died childless during the lifetime of the widow. Prior to his death he had assigned his interest to a bank. The court held that the interest of the deceased son vested in him on his father's death and it upheld the assignment. Mr. Justice Schaffer, for the court, said page 233:

"Here there can be no question that the gift was postponed to enable the widow to enjoy the income from the estate during her life. It should be noted that there is no provision in the will for the disposition of John's interest in the event he died without issue during the life of his mother."

Also, in the case at bar there is, in testator's will, no disposition of the interests of Walter, Jr., and Margaret following their deaths after the death of testator. Accordingly, their interests were vested.

Counsel for the widow's estate argues that it is apparent that testator did not intend to make an immediate gift to Walter, Jr., and Margaret because he said, in paragraph 3 of his will:

"I do not make any immediate bequest in this my Will to my son Walter Phillips Junior or my daughter Margaret, other than the above legacies because on my death both of them will be amply provided for under the Will of my brother, Horace Phillips."

This is not persuasive to us. It is apparent from a reading of the whole will that testator meant here that he gave no immediate gift to be enjoyed by his children, as during Zelpa's lifetime they would have other income to sustain them. This is not inconsistent with the creation of vested estates in his children.

## THE "PAY AND DIVIDE" RULE

Counsel for the widow asserts that under the above

rule the estates of the two children of testator were contingent. In Derham Estate, 435 Pa. 590, 597 (1969), the court said that this rule was abolished but only prospectively in 1959. The rule is stated in a note as follows:

"The confusing and highly controversial 'Pay and Divide' Rule, with its irreconcilable applications in many prior decisions of this Court, had been stated in several ways. Perhaps it is best stated in Hunter, Orphans' Court Commonplace Book, Vested and Contingent Interests, Section 12a: 'Where a gift in remainder is not direct, such as one in the words "I give and devise," but is only implied from a direction to the executor or trustee to "pay," "divide," "distribute," etc., it is contingent: [citing cases].' "

A clear example of the rule is stated in Rickenbach Estate, 348 Pa. 121, 126 (1943), as follows:

"The rule is illustrated in the early case of Moore v. Smith, 9 Watts 403, where the words are: '. . . pay unto my grandson £100 . . . as soon as he arrives to be twenty-one years of age'. It was held that such bequest was contingent, and lapsed upon the death of the grandson before attaining that age. Had the gift been made to the grandson, but payment deferred until he arrived at that age, it would have been vested. In the first illustration it was solely the direction to pay that *constituted* the bequest, hence the *vesting in interest* was postponed. In the second, there was a separate and antecedent gift, but merely a *deferment of possession*."

The rule has no application here. It is only a rule of construction and will not be applied to alter the testator's obvious intent. It was not applied in Derham Estate. In the case at bar, testator's intent to create vested remainders was clear and no cannon of construction will be permitted to alter that design.

## THE PRIOR CONSTRUCTION OF THE WILL

Counsel for the widow's estate argues that at the audit of decedent's estate in 1942, the will was construed as creating in the two children estates which were vested "subject to divestment in the event of their respective deaths prior to the death of the life tenant." This is an insecure foundation on which to base the claim. The audit statement of Girard Trust Company, Executor of decedent's estate was filed on April 22, 1942. This contains the following statement on page 3:

"(Note: It would appear that the interests of the two said children are vested but subject to divestment in event of their respective deaths prior to the death of the life tenant.)"

However, when the estate was called for audit, the trust officer testifying to the accuracy of the account did not call this question to the court's attention, and the attorney for the estate said to the court: "There are no questions."

It is clear that this brief reference to the issue now before us did not constitute an adjudication of it. The executor merely stated: "It would appear" and the court never even considered the matter. The two children were adults at the time of the audit and received notice of it. At that time, the probabilities were that at least one of them would survive the widow. It would not have occurred to them to establish their rights at that time. And while they received notice of the audit, they received no notice of an adjudication as to the future distribution of the estate. The brief comment by the trust officer as quoted above had no such effect.

Girard Trust Company was the executor of decedent's last will and testament and the same company (now known as Girard Trust Bank) is the trustee under the will and holds the assets to be distributed. On page 5 of its petition for distribution, it reaffirms the posi-

tion it adopted in 1942; namely, that an intestacy now exists as to the remainder interest involved here. This is not binding on the court. Counsel for the estate of Walter, Jr., adopts the opposite position. At the hearing, counsel for the accountant correctly stated the issue and we have resolved it.

A decree will be entered in accordance with this opinion.